## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| GAIL A. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:14-CV-00078-SLC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Gail A. Martin appeals to the Court from a final decision of the Commissioner of Social Security denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. PROCEDURAL HISTORY

Martin applied for DIB in August 2011, alleging disability as of September 25, 2009.[2] (Administrative Record ("AR") 242-45). The Commissioner denied Martin's application initially and upon reconsideration, and Martin requested an administrative hearing. (AR 142-67). On May 24, 2011, a hearing was conducted by Administrative Law Judge Melinda W. Kirkpatrick ("the ALJ"), at which Martin, who was represented by counsel; her husband; and a

---

[1] All parties have consented to the Magistrate Judge. (DE 11); *see* 28 U.S.C. § 636(c).

[2] Martin initially applied for DIB in November 2009, but her application was denied in October 2011 and she did not file an appeal. (AR 17). Therefore, this is her second application for DIB.

vocational expert testified. (AR 32-116). On November 27, 2012, the ALJ rendered an unfavorable decision to Martin, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform her past relevant work as an order clerk and data entry clerk. (AR 14-25). The Appeals Council denied Martin's request for review, at which point the ALJ's decision became the final decision of the Commissioner. (AR 1-13).

Martin filed a complaint with this Court on March 14, 2014, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Martin argues that the ALJ: failed to include any limitations in the residual functional capacity ("RFC") and the step-five hypothetical for her moderate difficulties in concentration, persistence, or pace; failed to fully evaluate the opinion of Dr. Stevens, a reviewing state agency psychologist; improperly evaluated the opinion of Dr. Braun, her family physician; and improperly considered her symptom testimony. (DE 16 at 11-19).

## II. FACTUAL BACKGROUND[3]

### A. Background

At the time of the ALJ's decision, Martin was sixty years old (AR 242); was a high school graduate and had attended six months of college (AR 37-38, 269, 315); and had past relevant work experience as an administrative assistant, data entry clerk, home health aide, and accounting clerk (AR 266-67, 272-89, 315, 331-37, 363). Martin alleges disability due to mood disorder, not otherwise specified ("NOS"); generalized anxiety disorder; panic disorder with agoraphobia; Asperger's syndrome; post traumatic stress disorder ("PTSD"); borderline

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 507-page administrative record necessary to the decision.

personality disorder; social phobia, carpal tunnel syndrome, and degenerative disc disease. (DE 16 at 2). Martin does not contest the ALJ's findings with respect to her physical impairments (DE 16 at 2 n.1); consequently, the Court will focus on the evidence pertaining to her mental impairments.

*B. Martin's Testimony at the Hearing*

At the hearing, Martin testified that she suffers from panic attacks and constant anxiety, which worsen when she leaves home, is around other people, or in loud environments. (AR 61, 63, 85, 88). She rated her anxiety symptoms as a "7.5" on a ten-point scale, reporting that she has a "countless" number of panic attacks in a week. (AR 60, 87). She also stated that she experiences periods of extreme irritability due to her bipolar disorder. (AR 74-75). Martin expressed that her attention span is "gone"; it now takes her weeks to read a book that in the past she would have read in one day. (AR 79, 81-82). She takes various medications for her mental symptoms without complaint of side effects; she also "self-medicates" her anxiety each day by drinking two beers and smoking cigarettes and a joint of marijuana. (AR 77, 97-99, 100).

When asked to describe her typical day, Martin testified that on weekdays she accompanies her husband in his work travel. (AR 77-79). She avoids contact with people, so she stays in the hotel, watches television, reads, and orders room service. (AR 77-79, 82). She helps ready her husband's work invoices by writing in names and addresses, but he completes the rest of the information. (AR 77-78). On weekends, she goes with her husband to the Elks club where he plays in a band, but she sits in the car or in the back of the club because she does not like loud noises. (AR 82-83). She also performs light housekeeping tasks on the weekends,

3

but at a very slow pace.[4] (AR 77, 82-83). She typically does not go out of the house (or hotel room) without her husband. (AR 321-27).

## C. Summary of the Medical Evidence

In August 2008, Martin started treatment with Dr. Edward Braun, reporting that she was under a lot of stress. (AR 381). He noted her report of a history of panic attacks and PTSD. (AR 381). He assessed depression, recurrent episode, in full remission; and anxiety with panic attack; and prescribed Xanax. (AR 382-83).

In September, Martin returned to Dr. Braun, reporting that the current dosage of Xanax was not controlling her anxiety. (AR 384). In November, she stated that she had stopped taking Zoloft due to side effects and was taking only half of a pill of Xanax; she conveyed that her depression was well controlled. (AR 386).

In January 2009, Martin told Dr. Braun that Celexa was helpful without causing side effects. (Tr. 388). In April, she said that her current dose of Xanax was not effective, as she continued to suffer from anxiety. (AR 391). In June, Dr. Braun noted that Martin was not eating well; she had lost thirty pounds since her initial appointment. (AR 394). By October, she had lost ten more pounds and presented with anxiety, but Dr. Braun documented that she had a normal mood and affect. (AR 397).

Also in October 2009, Martin began seeing Lisa Landwirth, a mental health counselor. (AR 400-01). At her first visit, Martin reported that she could not deal with the world, stayed in bed days in a row, and had no motivation. (AR 400). Ms. Landwirth assigned Martin a global assessment of functioning ("GAF") score of 50 and diagnoses of major depressive episode,

---

[4] Martin's husband also testified at the hearing, essentially corroborating her testimony. (AR 92-97).

single episode, severe without psychotic features; generalized anxiety disorder; and social phobia.⁵ (AR 401). In November, Martin reported that she had stopped smoking marijuana six weeks earlier; Ms. Landwirth noted that Martin's anxiety and PTSD symptoms had increased. (AR 403). In addition, Martin had a heightened startle response, insomnia, and was hyper-vigilant. (AR 403).

In January 2010, Martin told Dr. Braun that she was drinking a glass of wine each day. (AR 462). When he instructed her to stop mixing alcohol and Xanax, Martin became defensive, agitated, confrontational, and argumentative, stating that she must have some medication for anxiety. (AR 462). Dr. Braun instructed Martin to wean herself off Xanax and begin taking Paxil. (AR 465).

Also in January 2010, Dr. Braun completed a questionnaire at the request of Social Security. (AR 404-06). He reported Martin's mood and thought content were anxious and, at times, confrontational; she had poor coping skills and poor stress management. (AR 404-06). He diagnosed her with generalized anxiety disorder, benzodiazepine dependence, and alcohol dependence. (AR 405). Dr. Braun wrote that she was not capable of full time work, citing her poor concentration and periods of agitation. (AR 406).

In March 2010, Michael Stevens, Ph.D., a state agency psychologist, reviewed the record concerning Martin's first application for DIB. (AR 412-25). On a "Psychiatric Review

---

⁵ GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, avoids friends, neglects family, and is unable to work). *Id.* A GAF score of 41 to 50 reflects serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 reflects moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

5

Technique" form, Dr. Stevens concluded that Martin was moderately restricted in daily living activities and had moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. (AR 422). In his narrative, Dr. Stevens indicated that despite her moderate functional limitations, Martin could work a "simple job" with limited interpersonal interaction. (AR 424).

On a "Mental Residual Functional Capacity Assessment," Dr. Stevens found that Martin was moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonably number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors. (AR 407-08). In his narrative, Dr. Stevens wrote that Martin was moderately limited, but capable of understanding and remembering instructions, doing simple tasks, being cooperative, and being aware of hazards. (AR 409).

Martin was evaluated by Revathi Bingi, Ed.D., in September 2011 at the request of Social Security. (AR 447-52). He noted that Martin was able to focus well on the task and was very sociable, but at the same time was very impulsive, easily irritable, and required redirection. (AR 447-48, 451). Dr. Bingi indicated that Martin had many symptoms of bipolar disorder, but had never been diagnosed with it. (Tr. 452). He observed that she may have developed a dependency on Xanax and was using it to control various symptoms. (AR 451-52). Dr. Bingi assigned her a GAF of 40 and diagnoses of anxiety disorder NOS, cannabis dependence, and

6

borderline personality disorder. (AR 451).

The following month, F. Kladder, Ph.D., a state agency psychologist, reviewed Martin's record and completed a "Psychiatric Review Technique" form in the previous claim. (AR 122-24). He found that she had moderate limitations in maintaining concentration, persistence, or pace, but only mild limitations in daily living activities and maintaining social functioning. (AR 123). On a "Mental Residual Functional Capacity Assessment," Dr. Kladder indicated that Martin was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, and interact appropriately with the public. (AR 126). He found, however, that she was "[n]ot significantly limited" in her ability to get along with coworkers, peers, or supervisors. (AR 126-27). Dr. Kladder concluded that Martin was "capable of completing and maintaining skilled tasks on a regular basis and would work best out of the public eye." (AR 127). Dr. Kladder's opinion was later affirmed by a second state agency psychologist, William Shipley, Ph.D. (AR 459).

In May 2012, Dr. Manjinder Brar evaluated Martin upon referral by Dr. Stucky. (AR 489). Dr. Brar indicated Martin's signs and symptoms of depression as insomnia; lack of interests; increased irritability; and decreased motivation, energy, and concentration. (AR 489). He documented manic symptoms of increased distractability, irritability, pressured speech, thoughtless behaviors, and a decreased need for sleep; he also noted depressive symptoms of decreased motivation, energy, and concentration. (AR 489). On mental status examination, Martin's attitude was irritable, her mood anxious, and her affect constricted, but her attention and concentration were intact. (AR 491). He assigned her a GAF of 60 and diagnoses of

7

agoraphobia, Asperger's, and mood disorder NOS, with a rule-out diagnosis of bipolar disorder. (AR 492). He prescribed Buspar, Xanax, and Lamictal. (AR 492).

Martin returned to Dr. Brar in June, reporting that she had been doing better in terms of anxiety since changing to Buspar; her mental status exam was normal. (AR 488). By September, however, Martin's anxiety had heightened, and Dr. Brar increased her Buspar. (AR 504).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility," or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

8

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

9

Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On November 27, 2012, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 17-25). She found at step one that Martin had not engaged in substantial gainful activity after her alleged onset date. (AR 19). At step two, the ALJ concluded that Martin's degenerative disc disease and generalized anxiety disorder were severe impairments. (AR 19-20). At step three, the ALJ determined that Martin's impairment or combination of impairments were not severe enough to meet a listing. (AR 20).

> Before proceeding to step four, the ALJ assigned Martin the following RFC:
>
> [T]he claimant has the residual functional capacity to perform sedentary work . . . reduced as follows: She can occasionally climb ladders, ropes, scaffolds, ramps and stairs, balance, stoop, kneel, crouch and crawl, and she can have only occasional interaction with the public, co-workers and supervisors.

(AR 21). Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Martin was able to perform her past relevant work as an order clerk and data entry clerk, both as those jobs are generally performed and as Martin actually performed them. (AR 25). Therefore, Martin's claim for DIB was denied, and the ALJ did not proceed to step five. (AR 25).

### C. The ALJ Erred by Failing to Incorporate Martin's Deficiencies in Concentration, Persistence, or Pace into the RFC and the Step-Five Hypothetical

In challenging the ALJ's decision, Martin first argues that the ALJ failed to adequately account in the mental RFC and step-five hypothetical for her finding that Martin had moderate deficiencies in maintaining concentration, persistence, or pace. (*See* AR 21). Ultimately, Martin's argument is persuasive.

10

As explained earlier, the "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(3). In that regard, cases from the Seventh Circuit Court of Appeals "generally have required the ALJ to orient the [vocational expert] to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The "cases, taken together, suggest that the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.*

More specifically, in *O'Connor-Spinner*, 627 F.3d at 620-21, the Seventh Circuit concluded that the ALJ erred where he found that the claimant had moderate difficulties in concentration, persistence, or pace, but then failed to specifically observe this limitation when posing hypotheticals to the vocational expert at step five. Yet, in doing so, the Seventh Circuit acknowledged that it has not insisted "on a per se requirement that this specific terminology ("concentration, persistence, or pace") be used in the hypothetical in all cases." *Id.* at 619.

In that regard, cases reveal that where a claimant's difficulties in concentration, persistence, or pace arise from anxiety or other stress, a hypothetical limiting the claimant to, for example, "low-stress work" may be sufficient. *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding a hypothetical restricting claimant to work involving low production standards and a low-stress environment, where the claimant's difficulties with concentration, persistence, or pace arose from stress-induced headaches, frustration, and anger); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (allowing a hypothetical formulated in terms of

11

"repetitive, low-stress" work to stand, where claimant's deficits in concentration, persistence, or pace stemmed from a panic disorder); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding that the ALJ's restricting claimant from jobs "involving complex work processes or unusual levels of stress" adequately accommodated claimant's concentration problems arising, in part, from a panic disorder)).

A limitation to "simple, repetitive tasks" or "unskilled work," however, does not, on its own, adequately address deficiencies of concentration, persistence, or pace. *O'Connor*, 627 F.3d at 620 (collecting cases); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor*, 627 F.3d at 620 (citing *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)).

"Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6. Accordingly, the RFC and hypotheticals "must account for *both* the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (emphasis added); *see Yurt*, 2014 WL 3362455, at *7-8 (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities"); *Pearson v. Colvin*, No. 4:13-cv-35, 2014 WL 4352168, at *3 (S.D. Ind. Aug. 27, 2014) ("Without something else in the record suggesting a tie between a restriction to unskilled

12

work and the source of the claimant's difficulties in this area, and an indication that the [vocational expert] accounted for the clamant's particular deficiencies, remand is appropriate.").

Here, the ALJ concluded that Martin had moderate limitations in concentration, persistence, or pace, but the ALJ did not expressly include such limitation in the RFC and the hypothetical to the vocational expert. Nor did the ALJ limit Martin to "low-stress work" or the equivalent. Thus, under Seventh Circuit precedent, the RFC and hypothetical appear deficient with respect to the ALJ's accounting for Martin's moderate deficits in concentration, persistence, or pace.

The Commissioner argues, however, that the social limitation assigned by the ALJ—"only occasional interaction with the public, co-workers and supervisors" (AR 21)—adequately accommodates these deficits in concentration, persistence, or pace, because Martin testified that her primary difficulty stems from her deficient social skills. (*See* AR 53-54). But "[t]he ability to function in social settings and navigate workplace social interactions is very different from the ability to concentrate on individual work with a certain degree of success and productivity, and accounting for a limitation in the former area does not necessarily alleviate difficulties in the latter area." *Ittel v. Astrue*, No. 2:12-cv-96, 2013 WL 704661, at *14 (N.D. Ind. Feb. 26, 2013).

When concluding that Martin had moderate deficits in concentration, persistence, or pace, the ALJ acknowledged that Martin "*does not handle stress well*, and becomes anxious when she is around people." (AR 21 (emphasis added)). Considering Martin's difficulty coping with stress, the Court is not convinced that purely a social limitation sufficiently alleviates Martin's deficits in concentration, persistence, or pace. *See, e.g.*, *Yurt*, 758 F.3d at 859 ("[A]lthough the ALJ's hypothetical contained several limitations accounting for [the claimant's]

13

difficulties in social functioning, the blanket statement that he could perform 'unskilled' work fails to accurately capture [the claimant's] documented difficulties with concentration, persistence, and pace.").

The Commissioner further urges that the ALJ reasonably relied upon the opinion of Dr. Kladder (affirmed by Dr. Shipley), who in his narrative "translated" Martin's moderate difficulties in concentration, persistence, or pace into an RFC for skilled work. *Johansen*, 314 F.3d at 289. Dr. Kladder's narrative, however, "provides no insight about how or why [Martin's] mental impairments affect [her] attention, concentration, or pace." *Pearson*, 2014 WL 4352168, at *4. Thus, there is no explanation why Martin's difficulties with concentration, persistence, or pace would not interfere with the performance of skilled work.[7] *See id.*; *see also Yurt*, 758 F.3d at 858-59 ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (collecting cases).

Also, the ALJ never resolved the conflict between Dr. Kladder's opinion that Martin could perform "skilled" tasks (AR 127), and Dr. Stevens's opinion that she was limited to "simple" or unskilled tasks (AR 409, 424). *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.

---

[7] When rejecting Dr. Braun's opinion that Martin could not work due to periods of agitation and poor concentration, the ALJ cited Martin's "broad range of activities" in that she travels regularly and assists her husband with his invoices. (AR 24). But Martin provides only minimal assistance with her husband's invoices (inserting a name and address), and her daily activities are geared to avoid stress and hinge on her husband's companionship. *See* SSR 85-15, 1985 WL 56857, at *6 ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs.").

14

The trier of fact has the duty to resolve that conflict."). Although the ALJ stated that she afforded greater weight to Dr. Kladder's opinion because it was more recent, her reasoning is somewhat inconsistent because she then adopted the social limitation penned by Dr. Stevens one year earlier. (AR 24; *compare* AR 127, *with* AR 424). Consequently, that Dr. Stevens's limitation to "simple" tasks was penned earlier than Dr. Kladder's limitation to "skilled" tasks does not necessarily explain the ALJ's rationale for rejecting this portion of Dr. Stevens's opinion. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (stating that the ALJ's decision must demonstrate the path of her reasoning, and the evidence must lead logically to her conclusion).

The distinction between skilled tasks and unskilled tasks is important to this case. Martin is of advanced age with a high school education and no transferable job skills (AR 110), and the ALJ limited her to sedentary work based on her physical limitations. Accordingly, if Martin were assigned an RFC for unskilled work, she would be deemed "disabled" under grid rule 201.06, which "affect[s] claimants 55 years or older who are limited to sedentary work and whose education does not provide them with the ability for skilled work."[8] *Abbott*, 391 F. App'x at 556. The ALJ, without sufficient explanation, rejected the unskilled work limitation from Dr. Stevens, instead concluding that Martin could perform her past semi-skilled work as an order clerk and data entry clerk. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must sufficiently articulate her assessment of the evidence to assure that the important evidence has been considered and that the ALJ's path of reasoning can be traced).

In sum, the ALJ found that Martin had moderate deficits of concentration, persistence, or

---

[8] Grid rule 201.06 "directs a finding of disabled if a claimant acquired no skills from h[er] past work that would transfer easily to another skilled or semiskilled job." *Abbott v. Astrue*, 391 F. App'x 554, 556 (7th Cir. 2010).

pace, but incorporated only a social limitation into the RFC and the hypothetical, which is inadequate under Seventh Circuit precedent. In addition, the ALJ did not adequately explain why she rejected the limitation to unskilled work penned by Dr. Stevens, in favor of Dr. Kladder's opinion that Martin could perform skilled work. Accordingly, the Commissioner's final decision will be remanded for the purpose of reassessing Martin's RFC.[9]

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Martin and against the Commissioner.

SO ORDERED.

Enter for this 9th day of June, 2015.

s/ Susan Collins  
Susan Collins  
United States Magistrate Judge

---

[9] Because a remand is warranted on this basis, the Court need not reach Martin's remaining arguments.